UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VERNON L WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>MIKE FOSTER, et al.,<br><br>Defendants. | Case No. 3:23-CV-1049-CCB-JEM |

**OPINION AND ORDER**

Before the Court are Plaintiff Vernon L. Williams's Motion for Class Certification (ECF 54) and an "Application of Counsel to be Certified as Class Counsel." (ECF 53).

There are three other pending motions in this case. The first is a Motion for Summary Judgment by Defendant Deputy Chief Mike Foster of the Winona Lake Police Department ("Foster"). (ECF 40). The second is a Motion to Withdraw Appearance by Plaintiff's counsel Christopher C. Myers. (ECF 47). The third is a Motion to Sever filed by Defendant Sheriff Jim Smith. (ECF 50).

The Magistrate Judge issued an order staying briefing on the Motion for Summary Judgment pending resolution of the Motion to Withdraw. (ECF 49). Thus, the Motion for Summary Judgment is not yet ripe. Additionally, many arguments raised within the Motion to Withdraw and the Motion to Sever are contingent upon whether the proposed class is certified. (*See* ECF 47; 50). These interrelated motions persuade the Court to exercise its discretion "to decide the order in which" multiple motions are disposed. *See Aspen Am. Ins. Co. v. Blackbaud, Inc.*, 624 F. Supp. 3d 982, 990 (N.D. Ind.

2022). Accordingly, the Court will first rule on the motions concerning class certification, leaving all other motions for another day.

## I. Factual Considerations Under Rule 23

A court is not to simply "accept all of the complaint's allegations when deciding whether to certify a class." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Rather, a court should "make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. This may sometimes require a Court to "go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Szabo*, 249 F.3d at 675–76.

Such a venture beyond the pleadings is particularly helpful here where there is no brief in opposition to class certification. So the Court in presenting the relevant factual background will consider the entire record to determine whether Plaintiff has met his burden "of showing that a proposed class satisfies the Rule 23 requirements." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Dukes*, 564 U.S. at 350–51.

## II. Relevant Background

On June 3, 2022, Plaintiff was traveling with his girlfriend, Tomica Teetz, along U.S. Highway 30. (ECF 24 at 6). According to Defendant Foster, Teetz "waved her arms, threw an item out of the car window, and opened and closed the passenger door

while the Kia was moving." (ECF 44 at 1). According to the Amended Complaint, Teetz "snatched" Plaintiff's phone and "tossed it out of the car window." (ECF 24 at 7–9). Plaintiff later changed the narrative, testifying Teetz only "pretended" to throw the phone out and instead threw "a pop bottle." (ECF 41-1 at 65–66).

Dashcam footage, provided by Defendant Foster, shows Plaintiff's vehicle passing Defendant Foster's vehicle via the right lane before merging into Defendant Foster's lane. (ECF 41-8 at 0:20–0:35). Before Plaintiff's vehicle came to a complete stop at the intersection of U.S. Highway 30 and Indiana State Route 13 near Pierceton, Indiana, Teetz opened the passenger side door and exited, walking across two lanes of traffic towards an adjacent gas station. (*Id.* at 0:35–0:45). After Teetz exited, Plaintiff abruptly merged into the left-turn lane and made a U-turn at the light. (*Id.* at 0:40–1:00). Defendant Foster followed and, within two seconds of the U-turn, activated his lights and siren to initiate a traffic stop. (*Id.* at 1:00–1:10). Plaintiff immediately pulled over and both cars were at a complete stop within 15 seconds. (*Id.* at 1:00–1:15).

Over the next thirteen minutes or so, officers can be seen or heard talking to Plaintiff, communicating with other officers who were interviewing Teetz, discussing Plaintiff's alleged speeding, briefing each other on Plaintiff's firearm holstered in his waistband, and whether Teetz had decided to press charges for Plaintiff allegedly not letting her out of the vehicle. (*Id.* at 1:00–14:25). The dashcam footage does not display the time, but a little over 13 minutes after the traffic stop began, Defendant Foster and three other law enforcement officers approached Plaintiff's vehicle to arrest him. (*Id.* at 14:25–14:47).

According to Plaintiff, he was arrested on June 3, 2022, at approximately 10:30am. (ECF 24 at 1). Nothing in the record confirms the exact time of the arrest. However, the officer who simultaneously interviewed Ms. Teetz began the recording by stating it was taking place at "approximately 10:38am." (ECF 41-8 at 0:00–0:10). Following his arrest, Plaintiff was taken to the Kosciusko County Jail. (*Id.*). According to Plaintiff, he was not brought before a magistrate judge for a probable cause determination during his period of incarceration. Plaintiff remained in the Kosciusko County Jail until June 5, 2022, when he was released at 11:41am. (*Id.*; ECF 29 at 1–2).

On June 30, 2022, Plaintiff was formally charged with Criminal Confinement, a level 3 felony. (ECF 41-3). A jury later acquitted Plaintiff of that charge on May 4, 2023. (ECF 24 at 8).

Plaintiff filed suit on November 10, 2023, against Defendant Smith (in his official capacity) and Defendant Foster (in his individual capacity) in Kosciusko Superior Court. (ECF 4). Defendants removed the case to this Court on December 7, 2023, citing federal question jurisdiction. (ECF 1). Plaintiff filed an Amended Complaint on August 30, 2024, raising two claims. (ECF 24 at 6–9). The first is a Fourth Amendment false arrest and excessive force claim against Defendant Foster. (*Id.*). The second is a class action Fourth Amendment "overdetention" claim against Defendant Smith. (*Id.* at 1–6). In the latter claim, Plaintiff alleges that he and other class members were detained for more than 48 hours without a probable cause hearing in violation of the Fourth Amendment under *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). (ECF 24 at 1–6). In his answer to the Amended

Complaint, Defendant Smith raised several affirmative defenses, including statements opposing class certification. (ECF 29 at 10–11).

On August 31, 2026, Plaintiff filed a motion for class certification and a motion to certify his attorney as class counsel. (ECF 53; 54). As defined by the Amended Complaint, Plaintiff seeks to represent the following class:

> Individuals who, from November 10, 2021 (two years prior to the date Plaintiff first filed this action in state court) to the present, were incarcerated in the Kosciusko County Jail, who were arrested without a warrant, and were then held for more than forty-eight (48) hours following their arrest without receiving a judicial probable cause determination.

(ECF 24 at 2).

In his brief in support of the motion for class certification, Plaintiff twice represented to the Court that "Defendant [Smith] not oppose the class action." (ECF 55 at 2, 6). Defendant Smith did not file a brief in opposition to either motion, making the class certification ripe for review.

## III. Analysis

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. *See* Fed. R. Civ. P. 23. Class actions help promote "the efficiency and economy of litigation." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974). They do so by consolidating sufficiently numerous but similarly situated claims into a single proceeding that is litigated by one or more ideally positioned plaintiffs, thereby saving judicial resources and time. *See Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

Under Rule 23, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a). Colloquially, these requirements are referred to as (1) numerosity, (2) typicality, (3) commonality, and (4) adequacy of representation. *Messner*, 669 F.3d at 808.

A court is not to "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811. That said, class "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

Plaintiff's Motion for Class Certification does not specify which subset of class he seeks to certify. However, his brief in support of the Motion includes a section dedicated to the additional factors required under Rule 23(b)(3). (ECF 55 at 5–7). When a plaintiff seeks certification under Rule 23(b)(3), a court may exercise its discretion to certify only if the proponents of the class show "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811. District courts retain "broad discretion to determine whether certification of a class-action lawsuit is

appropriate." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997). Ultimately, the plaintiff bears the burden of "showing that a proposed class satisfies" Rule 23 by a preponderance of evidence. *Messner*, 669 F.3d at 811.

**A. Numerosity**

To satisfy numerosity, Plaintiff must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Rule 23(a)(1). The Seventh Circuit does not maintain a "magic number" of class members that makes a class sufficiently numerous under Rule 23(a)(1). *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). But the Seventh Circuit generally regards "a forty–member class. . . as sufficient to meet the numerosity requirement." *Id.*; *see also* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:12 (6th ed. 2022) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

Plaintiff estimates that the range of individuals detained in excess of 48 hours between November 10, 2021, and the present is at least 809, with the possibility of growing up to 1,011. (*See* ECF 54 at 2–3). In support, Plaintiff provides a spreadsheet, allegedly created by Defendant Smith, and "modified" by Plaintiff's counsel that includes 809 names, dates of detention, initial time of detention, dates of release, time of release, total time incarcerated, and time held beyond the 48-hour threshold under *Gerstein* and *McLaughlin*. (*See* ECF 54 at 2; 54-3). Plaintiff also provides a spreadsheet containing 222 individuals. (ECF 54-4). Plaintiff asserts these individuals could fit the class description but he lacks information to confirm their membership within the

proposed class. (*Id.*). Finally, Plaintiff asserts, albeit without citation, that "the parties have stipulated that there are at least 750 class members." (ECF 54 at 3).

Plaintiff represents to the Court that the spreadsheets are based on detention records provided by Defendant. There is nothing in the current record that questions the veracity of the spreadsheets. And Defendant Smith, by failing to file any brief in opposition to the class, provides no evidence to the contrary. Even discounting the 222 individuals who, due to missing information, do not at present fit the proposed class definition, it would be impracticable to join 809 individuals allegedly detained beyond the 48-hour threshold. Accordingly, the Court finds Plaintiff meets the numerosity requirement.

**B. Commonality**

Commonality requires "questions of law or fact common to the class." Rule 23(a)(2). A plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Falcon*, 457 U.S. at, 157). But "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Instead, commonality requires that the "common contention" be "capable of classwide resolution." *Id.* In other words, the truth or falsity of the common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* To that end, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

So long "as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). By extension, municipal officials sued in their official capacity and their respective entities are among those to whom Section 1983 liability applies. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To establish *Monell* liability under Section 1983, a plaintiff must demonstrate that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority . . . ; which (3) was the proximate cause of his injury." *McFields v. Dart*, 982 F.3d 511, 516 (7th Cir. 2020) (quoting *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002)).

The Fourth Amendment requires a person detained without a warrant to be "promptly" brought before a judicial officer for a "fair and reliable determination of probable cause." *Gerstein*, 420 U.S. at 125. *McLaughlin* clarified what "promptly" meant by holding that "judicial determinations of probable cause within 48 hours of arrest will, *as a general matter*, comply with the promptness requirement of *Gerstein*." 500 U.S. at 56 (emphasis added). But the 48-hour line is only a "presumption." *Portis v. City of Chicago, Ill.*, 613 F.3d 702, 703–04 (7th Cir. 2010). A "delay of more than 48 hours is presumed unreasonable" under the Fourth Amendment. *Id.* A "delay of 48 hours or less is presumed reasonable." *Id.* Once it is shown that a person has been detained longer than 48 hours, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *McLaughlin*, 500 U.S. at 57.

Here, Plaintiff filed suit against Defendant Smith in his official capacity as Kosciusko County Sheriff, which operates as a suit against the County itself. (ECF 24); *see Graham*, 473 U.S. at 165–66. Plaintiff asserts that he and each prospective class member were detained by the same sheriff, in the same jail, under the same procedures/customs, after being arrested without a warrant, and "were held without being released within forty-eight (48) hours." (ECF 54 at 4). While some individualized evidence may be necessary to establish membership within the class or to determine whether each detention beyond the 48-hour threshold was justified by a bona fide emergency or other extraordinary circumstance, the "common contention" is whether Defendant Smith, by policy or custom and in his official capacity as Kosciusko County Sheriff, permitted class members to be detained beyond 48 hours after a warrantless arrest without being brought before a magistrate for a probable cause hearing. (ECF 54 at 4). At this stage, that is enough to establish commonality for the purposes of Rule 23(a)(2).

**C. Typicality**

Typicality requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff seeking class certification must demonstrate that his "claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (quotations omitted). This often entails a showing that the named plaintiff's claim (1) "arises from the same event or practice or course of conduct that gives rise to the claims of other class members," and (2) that such claims

are "based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quotations omitted).

As noted earlier, Plaintiff seeks to litigate only one claim on behalf of the class. That claim is whether Defendant Smith violated the Fourth Amendment by "employ[ing] and implement[ing] unconstitutional policies or policies of omission, with respect to getting pretrial detainees a judicial probable cause determination within forty-eight (48) hours of their arrest," or otherwise "failing to supervise and train his deputies, guards, booking offices, and other jail staff to promptly bring inmates arrested without a warrant before a judge or magistrate within forty-eight (48) hours after arrest." (ECF 24 at 2). While necessarily emblematic of the class as a whole, the crux of Plaintiff's claim is not centered on his alleged individual detention beyond 48 hours, but that it occurred as part of the same "practice or course of conduct" that injured other class members. *Rosario*, 963 F.2d at 1018. Furthermore, the success of Plaintiff's unconstitutional practice or policy claim against Defendant Smith will turn on identical legal theories as each other member of the class. *Id.* Therefore, Plaintiff's claims are typical of those within the putative class.

**D. Adequacy of Representation**

Rule 23 asks a court to ensure that the "parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is a two-part analysis that examines both "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d

583, 592 (7th Cir. 2011). The ultimate aim is to "uncover" potential "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). By doing so, the court protects the due process rights of absent class members by ensuring that "the class's champion will pursue its interests sufficiently well so as to produce a judgment that can fairly bind all members of a group who cannot appear before the court individually." 1 *Newberg and Rubenstein on Class Actions* § 3:50; *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

To be an adequate representative, the "named plaintiff must be a member of the putative class and have the same interest and injury as other members." *Beaton*, 907 F.3d at 1027. "Conflicts of interest, as distinct from differences in entitlements, create an issue of adequacy of representation by requiring the class representative to choose between competing class members." *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021) (quoting *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012)). Additionally, a "representative might be inadequate if he is subject to a substantial defense unique to him." *Beaton*, 907 F.3d at 1027.

Here, nothing suggests that Mr. Williams, as the named plaintiff, would be inadequate to litigate on behalf of the absent class members. The parties do not dispute that Plaintiff is a member of the putative class. There is equally no indication that a conflict of interest exists between Mr. Williams, as named plaintiff, and the absent class members. Nor would he be subject to any unique defense against him that would not be available against other class members. Indeed, a Fourth Amendment claim alleging an explicit policy or practice of overdetention is a claim identical among all putative class

members. And lastly, Plaintiff has thus far actively litigated his claim without any delay or bad faith. Accordingly, the Court concludes that Mr. Williams, as named plaintiff, is an adequate representative of the putative class.

An applicant wishing to serve as class counsel may only be appointed after determining the applicant "is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2). It is the duty of the court considering certification to verify that an applicant will "fairly and adequately represent the interests of the class." Rule 23(g)(4). In making that determination, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Rule 23(g)(1)(A). The court is also permitted to "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(B).

Plaintiff's counsel, Mr. Christopher C. Myers, represents to the Court that he is an experienced class litigator with knowledge of this precise claim. (ECF 53). Indeed, the Court can find several other classes in which Mr. Myers served as class counsel. *Strunk v. LaGrange Cnty. Sheriff*, No. 1:10CV23 JD, 2011 WL 839662, at *1 (N.D. Ind. Mar. 7, 2011); *Long v. Madison Cnty. Sheriff*, No. 117CV00142SEBTAB, 2020 WL 1876142, at *1 (S.D. Ind. Apr. 15, 2020); *Hale v. Stoffel*, No. 1:17-CV-108-TLS, 2018 WL 1250865, at *1 (N.D. Ind. Mar. 12, 2018). Without any objection to his application, the Court finds no

reason to believe that Mr. Myers will fail to represent the interests of the class members. Accordingly, the Court also concludes that the proposed class counsel is also adequate.

**E. Predominance and Superiority**

A plaintiff seeking to certify a class under Rule 23(b)(3) must meet additional pleading standards. Under Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P 23(b)(3). These additional requirements are commonly referred to as the "predominance" and "superiority" prongs.

As explained by Rule 23(b)(3), predominance examines whether the common questions capable of class wide adjudication predominate over any question that affects only individual members. *Amchem*, 521 U.S. at 622–23. This additional requirement is "far more demanding" than commonality. *Id.* at 623–24. Although relevant, predominance does not merely demand a tally of common questions that outnumbers those with individualized determinations. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Instead, it is a "qualitative" analysis seeking to determine each question's relative importance. *Id.* If individual questions "overwhelm questions common to the class," the demands of Rule 23(b)(3) are not met. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013); *see also Parko*, 739 F.3d at 1085. However, the presence of some individualized determinations is not fatal. Indeed, individual inquiries may be

required after the class phase. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016).

As noted earlier, *McLaughlin* characterizes the 48-hour line as a general presumption. A delay of more than 48 hours is presumed unreasonable unless rebutted by evidence of "a bona fide emergency or other extraordinary circumstance." *McLaughlin*, 500 U.S. at 57; *Portis*, 613 F.3d at 703–04. The Seventh Circuit has deemed this individualized determination, without more, as unworthy of class certification. *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 492 (7th Cir. 2017). That said, *McLaughlin*'s burden-shifting framework does not entirely preclude class certification. *Id.* If a plaintiff can assert that his detention and other class members' detentions were the result of a defendant maintaining—for the duration of the class period—an unconstitutional "policy or practice" of overdetention, then the existence of that "policy or practice" could become the predominant question that applies class-wide. *Id.*; *see also Portis*, 613 F.3d at 705–06 (holding that "class treatment might be appropriate if the class sought to establish that a jurisdiction had adopted a policy of deliberate delay") (citing *McLaughlin*, 500 U.S. at 59).

That is precisely the nature of Plaintiff's claim here. Had Plaintiff sought to certify a class that only alleged that their collective detentions were unconstitutional, it would likely have failed on predominance grounds because the fact-finder would have been required to individually determine whether "a bona fide emergency or other extraordinary circumstance" existed in each instance. *McLaughlin*, 500 U.S. at 57. But here, Plaintiff bypasses these individualized questions by asserting the class members'

overdetentions were the result of Defendant Smith "employ[ing] and implement[ing] unconstitutional policies, or policies of omission" or otherwise failing to "supervise and train" his subordinates to comply with constitutional detention practices. (ECF 24 at 2). With that, the individualized question of whether each overdetention may have been justified by "a bona fide emergency or other extraordinary circumstance" takes a backseat to the main event: determining whether an unconstitutional policy or practice of overdetention was the rule of detention in Koscisuko County. *See Driver*, 859 F.3d at 492 ("Neither *Portis* nor *Harper* preclude class certification in a case such as this one, in which the plaintiffs assert that the defendants' policy or practice caused them to be detained for an unconstitutionally-unreasonable length of time.").

Individualized damages also present a wrinkle, but this does not preclude certification. Individualized damage determinations do not defeat the feasibility of class certification. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). If a defendant's liability is a "genuinely common" issue, "and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Id.*

A finding that Defendant Smith enforced an unconstitutional policy or practice of overdetention efficiently adjudicates the central claim of the class in one fell swoop. While the damages awarded because of that finding may vary from class member to class member depending on the length of their detention beyond 48-hours, Plaintiff suggests that the Court could avoid a predominance problem by bifurcating liability

and damages, appointing a magistrate judge or special master to preside over individualized damage proceedings, decertifying the class after a determination on liability, creating sub-classes, or altering the class definition. (ECF 54 at 7–8). With these various tools at the Court's disposal and for all the reasons stated above, Plaintiff has satisfied the predominance requirement under Rule 23(b)(3).

Superiority is more straightforward. This prong examines whether a class action "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quotations omitted). To that end, Rule 23 directs courts to consider several factors including (A) whether class members would have an interest in individually controlling their claims, (B) whether any litigation by or against class members is ongoing, (C) whether it is desirable to concentrate the litigation of the claims in a particular forum, and (D) whether it would be difficult in managing the class action. Rule 23(b)(3)(A)–(D).

An important consideration within these factors are the incentives created by consolidated versus individual litigation. A class may be considered "superior to other available methods" of litigation if the damages available to each class member are too insignificant to incentivize them to pursue a claim individually. *Phillips Petroleum*, 472 U.S. at 809; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); Fed. R. Civ. P 23(b)(3)(A).

Plaintiff contends that "it is likely that many individual members would forfeit their claims if they could not pursue them as a class because of the expense and complexity of litigating a *Monell* official capacity claim and asserting *Gerstein*/*Riverside* claims against a sheriff." Plaintiff does not enumerate his desired damages. Thus, the Court does not know what damages might be expected for each individual class member. But assuming that such damages are minimal—for instance in the case of a class member being detained for only a few minutes beyond the 48-hour threshold—consolidating 800 overdetention claims into a single class creates economies of scale that reduces the cost of litigation, maximizes potential recovery, and disincentivizes individual litigation.

There is no indication from the parties that similar claims regarding Defendant Smith's alleged policy or practice are being litigated elsewhere. All injurious conduct allegedly occurred within the Northern District of Indiana, rendering this Court the appropriate forum to litigate the claims. And finally, the efficiency and uniformity that would be created by a class action of this size, would outweigh any potential difficulties that would arise in maintaining the class. Accordingly, the Court concludes that proceeding as a class action is superior to individual litigation.

## CONCLUSION

Having concluded that Plaintiff has satisfied each element of Rule 23, the Court **GRANTS** Plaintiff's Motion for Class Certification. (ECF 54). The Class is defined as follows:

> Individuals who, from November 10, 2021, to the present, were incarcerated in the Kosciusko County Jail, who were arrested without a warrant, and were then held for more than forty-eight (48) hours following their arrest without receiving a judicial probable cause determination.

Additionally, the Court **GRANTS** the "Application of Counsel to be Certified as Class Counsel." (ECF 53). The Court **APPOINTS** and **CERTIFIES** Mr. Christopher C. Myers as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

SO ORDERED on November 24, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT